SEALED

FILED

UNITED STATES DISTRICT COURT 2017 MAY 13 PM 12:53
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CLERK DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____

| | |
|---|---|
| UNITED STATES OF AMERICA, | § CRIMINAL NO. SA-17-CR-____ |
| | § |
| Plaintiff, | § SEALED |
| | § INDICTMENT |
| v. | § |
| | § CTS 1-2: 18 U.S.C. §1343 – Wire Fraud; |
| CARLOS I. URESTI (1); | § CT 3: 18 U.S.C. §1349 – Conspiracy to |
| STANLEY P. BATES (2) ; and | § Commit Wire Fraud; |
| GARY L. CAIN (3); | § CTS 4-7: 18 U.S.C. §1343 – Wire Fraud; |
| | § CT 8: 18 U.S.C. §1956(h) - Conspiracy to |
| Defendants. | § Launder Monetary Instruments; |
| | § CTS 9 – 19: 18 U.S.C. §1957 - Engaging |
| | § in Monetary Transactions in Property |
| | § Derived from Specified Unlawful Activity; |
| | § CTS 20-21: 15 U.S.C. §§ 78j(b) & 78ff & |
| | § 15 U.S.C. § 240.10b-5 & 18 U.S.C. § 2 – |
| | § Securities Fraud; |
| | § CT 22: 15 U.S.C. §§ 78o(a)(1) & 78ff – |
| | § Unregistered Securities Broker; |
| | § |
| | § NOTICE OF GOVERNMENT'S |
| | § DEMAND FOR FORFEITURE |

SA17CR 381 DAE

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant herein:

### A.   PERSONS AND ENTITIES

1.   FOUR WINDS LOGISTICS, LLC, also known as FOURWINDS LOGISTICS

LAREDO, FWL-LLC and FWLL-LLC (hereinafter "Four Winds") was a Texas corporation that

purported to buy and sell sand used in hydraulic fracking to produce oil ("fracking sands"). Four

Winds was based in San Antonio, Texas. Four Winds primarily operated from April 1, 2014

until October 5, 2015. Four Winds was primarily funded by and operated with money from five

outside investors. These investors have collectively lost millions of dollars from their investment

**EXHIBIT 10**

into Four Winds.

2.     **CARLOS I. URESTI** ("**URESTI**") was the 1% owner of Four Winds. **URESTI** is an attorney and Texas State Senator. Among other roles, **URESTI** served as Four Winds outside general legal counsel and was paid a monthly retainer fee to do so. **URESTI** also acted as an investment broker and solicited individuals to invest in Four Winds. **URESTI** also acted as escrow trustee over some of the investment in Four Winds and was paid a percentage of that investment to do so. **URESTI** did not invest any of his own money into Four Winds.

3.     **STANLEY P. BATES** ("**BATES**") was the 51% owner of Four Winds and was its Chief Executive Officer. **BATES** primarily controlled Four Winds' finances and expenditures. Four Winds paid **BATES** through direct draws, salary payments, and payment of personal expenses. **BATES** did not invest any of his own money into Four Winds.

4.     **GARY L. CAIN** ("**CAIN**") acted as a consultant for Four Winds, through his company Trinity Global Funding & Consulting, also known as TGFC, LLC (hereinafter "Trinity"), from September 23, 2014, until May 22, 2015. Under the terms of the consulting contract, Four Winds paid **CAIN**, through Trinity, $30,000 a month for consulting services. Neither **CAIN** nor Trinity invested any money into Four Winds.

5.     SHANNON SMITH ("SMITH") was the 48% owner of Four Winds and served as its Chief Operations Officer. Four Winds paid SMITH through direct draws, salary payments, and payment of personal expenses. SMITH did not invest any of his own money into Four Winds.

6.     LAURA JACOBS ("JACOBS") was the comptroller for Four Winds. JACOBS was primarily responsible for the bookkeeping for Four Winds. Four Winds paid JACOBS a salary and bonuses. JACOBS did not invest any of her own money into Four Winds.

7.     ERIC NELSON ("NELSON") was a Four Winds employee who was primarily responsible for preparing advertising and promotional materials for Four Winds.  Four Winds paid NELSON a salary and bonuses.  NELSON did not invest any of his own money into Four Winds.

8.     Victim 1 was an investor into Four Winds who lost the significant majority of her investment.  **URESTI** represented Victim 1 in connection with a legal action beginning on or about August 25, 2010.  In approximately October of 2012, Victim 1 received settlement proceeds from that legal action.   On or about March 14, 2013, **URESTI** obtained $25,000 from Victim 1 by fraud and deceit.  Later, in May of 2014, **URESTI** introduced Victim 1 to **BATES** and Four Winds.  **URESTI,** through his consulting company Turning Point Strategies, LLC (hereinafter "T.P.S."), was paid a commission and profit sharing based upon Victim 1's investment.  **URESTI** and **BATES** convinced Victim 1 to invest the significant remainder of Victim 1's settlement proceeds, approximately $900,000, in Four Winds.  A company named FWL-DC, LLC ("FWL-DC") was formed to manage Victim 1's investment.  **URESTI, BATES,** and SMITH were all managers of FWL-DC.

9.     Victim 2 and Victim 3 are a married couple who invested in Four Winds. Victim 2 and Victim 3 lost the significant majority of their investment.

10.     Victim 4 is a group of individuals and businesses that collectively invested in Four Winds.  Victim 4 combined its investment with Victim 2 and Victim 3.  A company named FWL-MX, LLC ("FWL-MX") was formed to manage their collective investment.  **BATES** and SMITH were managers of FWL-MX.  The collective investment was transferred into bank accounts owned by the **URESTI** Law Firm IOLTA account.  In exchange, **URESTI** received a percentage of their investment as "escrow fees."

3

### B.    INVESTMENT INTO FOUR WINDS

11.    The investments into Four Winds (including those of Victims 1, 2, 3, and 4) were accomplished through contracts with Four Winds styled as a Joint Venture Agreement ("JVA") or a Memorandum of Understanding ("MOU"). The JVAs and MOUs were securities, as defined by the securities laws of the United States. Specifically, those JVAs and MOUs were securities because the investors invested money in a common enterprise and were led to expect profits solely from the efforts of Four Winds and persons associated with Four Winds.

12.    Investors were told that their investment was only to be used to purchase fracking sand (minus a set amount for administrative cost). Profits were to be divided between Four Winds and the investor on a basis agreed to in the JVA.

13.    Federal law defines a securities broker as any person engaged in the business of effecting transactions in securities for the account of others. **URESTI** was a securities broker for Four Winds and was paid a commission based upon the investments he could secure for Four Winds. As a broker, Federal law required **URESTI** to register with the Securities and Exchange Commission ("SEC") and was required to disclose commissions and payments received as compensation. **URESTI** was not registered as a broker with the SEC.

14.    **URESTI** also utilized two associates who helped solicit individuals to invest in Four Winds. **URESTI** and **BATES** touted **URESTI**'s position as a Texas State Senator in sales pitches to investors. By agreement, **URESTI** was to be paid a commission of 3% for investments secured by **URESTI** into Four Winds and 10% of the profits generated by that investment. Further, **URESTI** was to be paid 20% of the profits for every subsequent increased investment. These commissions and profits were paid to **URESTI** through T.P.S.

15.     The allegations contained in Paragraphs 1 through 14 are incorporated in each and every Count of this Indictment.

## COUNTS ONE AND TWO
### (Wire Fraud)
### (18 U.S.C. §1343)

## THE SCHEME TO DEFRAUD

16.     From on or about October 15, 2012, to on or about March 31, 2013, Defendant **CARLOS I. URESTI** devised and intended to devise a scheme to defraud Victim 1, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

17.     Soon after Victim 1 received her legal settlement, **URESTI** devised a scheme to obtain money from her.  **URESTI** told Victim 1 that he (**URESTI**) had clients who were seeking investors.  To further this, on January 12, 2013, **URESTI**, using **Carlos@urestilaw.com**, emailed Victim 1 claiming he (**URESTI**) had two clients interested in two different loans, including a loan for $25,000.  **URESTI** claimed he was acting as a broker between Victim 1 and **URESTI**'s clients.  On or about March 14, 2013, Victim 1 wired $25,000 into the bank account of "Law Office of Carlos Uresti" with a registered account address of 924 McCullough Ave, San Antonio, Texas.   The stated purpose of the wire on the wire authorization was "investment." Instead of an investment and unbeknownst to Victim 1, **URESTI** used the $25,000 for personal and business expenses.  Victim 1 did not authorize **URESTI** to use the $25,000 for **URESTI**'s personal and business expenses.

## EXECUTION OF THE SCHEME

18.     On or about the following dates, in the Western District of Texas and elsewhere, the Defendant,

### CARLOS I. URESTI (1),

having devised and intended to devise the aforesaid scheme, for the purpose of executing said scheme, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate and foreign commerce by means of a wire communication, certain signs, signals and sounds to and from the Western District of Texas, as described below.

| COUNT | DATE | ORIGINATING TRANSACTION | DESTINATION |
|---|---|---|---|
| 1 | January 12, 2013 | Electronic message from **URESTI** using **Carlos@Urestilaw.com** | Email account of Victim 1 |
| 2 | March 14, 2013 | Electronic wire transfer of funds from Lone Star Bank Account #****4569 for $25,000 | The bank account of "The Uresti Law Firm PC" at Chase Bank Account #*****3933 with a registered account address of 924 McCullough Ave, San Antonio, Texas |

All in violation of Title 18, United States Code, Section 1343.

### COUNT THREE
### (Conspiracy to Commit Wire Fraud)
### (18 U.S.C. §§1349, and 1343)

19.     Beginning in or about February 1, 2014, and continuing until on or about December 31 2015, in the Western District of Texas, and elsewhere, the Defendants,

### CARLOS I. URESTI (1),
### STANLEY P. BATES (2), and
### GARY L. CAIN (3),

did knowingly combine, conspire, confederate, and agree together and with SHANNON SMITH, LAURA JACOBS, ERIC NELSON, and others, both known and unknown to the Grand Jury, to

use interstate and foreign wire transmissions for the purpose of carrying out a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

20.    The object of the conspiracy was to enrich the conspirators by inducing individuals in investing money in Four Winds and maintaining that investment in Four Winds by providing false and misleading information and omitting material facts regarding their investment.

## MANNER AND MEANS OF THE CONSPIRACY

21.    The scheme and artifice was carried out in the following manner and means, amongst others:

(a)    Four Winds was funded primarily by investor funds. Neither **URESTI**, **BATES**, **CAIN**, SMITH, JACOBS nor NELSON, (collectively the "CONSPIRATORS") invested any of their own money into Four Winds. Despite this, the CONSPIRATORS were all paid significant amounts of money from Four Winds. Due in part to large monetary payments the CONSPIRATORS made to themselves and others, Four Winds' investors lost millions of dollars.

(b)    By agreement with the investors, Four Winds and the CONSPIRATORS were to use investor funds solely for the purchase and transportation of fracking sands, minus an agreed amount for administrative cost. Instead, the CONSPIRATORS misused investors' funds to enrich themselves and others.

(c)    Because Four Winds' expenses exceeded its profits, there was a constant need for new investors and investment. To that end, **BATES**, on behalf of Four Winds, entered into an agreement with **URESTI** whereby **URESTI** would become a broker and recruit investors into Four Winds. Specifically, Four Winds agreed to pay **URESTI** the following:

7

(1) a 3% fee as an investor broker of each investment secured by **URESTI** into Four Winds;

(2) an initial profit share of 10% of every joint venture agreement attributed to **URESTI**'s efforts for the first time investment;

(3) a subsequent profit share of 20% of every joint venture agreement between investors and Four Winds for any subsequent increased investment; and

(4) awarded **URESTI** 1% ownership of Four Winds.

(d) Among other investors, **URESTI** solicited his legal client, Victim 1, as an investor into Four Winds. As part of the solicitation, **URESTI** told Victim 1 that her investment would obtain a better return with Four Winds than with her current investments. **URESTI** failed to disclose the material facts that he (**URESTI**) would be obtaining a commission and a percentage of the profits from Victim 1's investment.

(e) As part of the solicitation, **URESTI** made it appear to Victim 1 that **URESTI** was also considering investing in Four Winds. **URESTI** never invested in Four Winds.

(f) **URESTI** gave legal advice to Victim 1 regarding her investment in Four Winds despite also representing Four Winds.

(g). On or about May 29, 2014, **URESTI**, **BATES**, and SMITH formed FWL-DC, LLC., which was the limited liability company established to hold the investment of Victim 1. On or about June 19, 2014, **BATES** on behalf of Four Winds, and **URESTI** on behalf of T.P.S., signed a contract whereby Four Winds agreed to pay T.P.S. 6% of the net profit from FWL-DC.

(h) Based upon **URESTI** and **BATES**' various representations, Victim 1 invested a total of $900,000 in Four Winds. On or about June 16, 2014, Victim 1 invested approximately $800,000 in Four Winds. On or about August 28, 2014, Victim 1 invested an additional $100,000 in Four Winds. The CONSPIRATORS did not use Victim 1's investment to

8

purchase fracking sands as per the agreement between Victim 1 and Four Winds.  Instead, the CONSPIRATORS used the investment as follows:

> (1)   Victim 1's investment was used to pay money to **URESTI, BATES,** and other members of Four Winds;
>
> (2)   Victim 1's investment was used to pay an earlier investor; and
>
> (3)   Victim 1's investment was used to pay for Four Winds' general operating expenses.

Victim 1 was also paid money from Four Winds which purported to be "profits" from Victim 1's investment.  However, these payments were actually Victim 1 being paid from Victim 1's own funds.

> (i)   On or about June 23, 2014, **BATES** transferred or caused to be transferred the majority of Victim 1's investment into Four Winds' general operating account (Chase bank account #*****8761).  On or about June 25, 2014, **BATES** gave **URESTI** a check for $40,000 payable from that same account.  **URESTI** deposited this check into the "Uresti Law Firm PC IOLTA Trust" account (Chase Bank account #******3941).  As part of the transactions, **URESTI** drafted a promissory note in which **URESTI** promised to repay the $40,000 to **BATES** in his (**BATES**) personal capacity.  The promissory note made no mention of repayment to Four Winds or Victim 1.  **URESTI** and **BATES** both signed this promissory note.

> (j)   On several occasions, Victim 1 demanded an accounting of Victim 1's investment into Four Winds.  At **BATES**' direction, JACOBS fabricated a spreadsheet which falsely showed that Victim 1's investment was used to purchase fracking sands.  JACOBS emailed this false spreadsheet to Victim 1 on several occasions.  **URESTI** was included on or otherwise provided several of these emails.

9

(k)     JACOBS informed **CAIN** and others that the spreadsheet sent to Victim 1 was false and misleading.  Despite this, in approximately February of 2015, **CAIN** met with Victim 1 at the Four Winds' offices and reviewed the spreadsheet with Victim 1.  **CAIN** falsely assured Victim 1 that the spreadsheet was correct and accurately reflected the status of her investment into Four Winds.

(l)     **URESTI** also recruited or helped recruit Victim 2, Victim 3, and Victim 4 as investors in Four Winds.  As with Victim 1, **URESTI** did not disclose to Victim 2 and Victim 3 that he was receiving a commission and profit share based upon their investment.

(m)     To induce potential investors, **BATES** and NELSON altered a bank statement from Four Winds' operating account to reflect a grossly inflated account balance.  On or about May 30, 2014, **BATES** emailed NELSON an accurate bank statement for Four Winds' operating account which reflected an account balance of $98,896.68.  NELSON then altered that bank statement to reflect a false account balance of $18,798,896.68 and emailed the altered bank statement back to **BATES**.

(n)     On or about June 9, 2014, **BATES** emailed the altered bank statement to Victim 2, Victim 4 and others.  **URESTI** was included on the email to Victim 4.

(o)     **URESTI** induced Victim 2, Victim 3 and Victim 4 into investing in Four Winds by stating that he would act as escrow trustee over the investor's money for compensation.  **URESTI** told Victim 3 that Four Winds would never have control over the investors' money.  Despite this and while acting as escrow agent, on or about November 13, 2014, **URESTI** transferred or caused to be transferred a portion of Victim 2, Victim 3, and Victim 4's investment from the "Uresti Law Firm IOLTA" account into a Four Winds' bank account.  This money was then comingled with other funds and used that same day to pay a different investor.

10

(p)     By at least December of 2014, **CAIN** became aware that **BATES** was misusing investor funds. In approximately January of 2015, Victim 2 questioned **CAIN** about the security of his investment. **CAIN** falsely assured Victim 2 that Victim 2's investment was secure and that **CAIN** would inform Victim 2 if that ever changed.

(q)     Despite knowing investor funds were misused, **CAIN** continued to submit large bills and receive large payments from Four Winds through Trinity.   The money paid to **CAIN** contributed to the erosion of the investors' principal.

(r)     Between on or about February 1, 2014, and continuing until on or about December 31 2015, the CONSPIRATORS used interstate wire communications for the purpose of executing their scheme and artifice to defraud. As a result of **URESTI, BATES,** and **CAIN's** false and fraudulent representations and the actions described above, Victim 1, Victim 2, Victim 3, and Victim 4 were deprived of monies and property.

All in violation of Title 18, United States Code, Sections 1343 and 1349.

### COUNTS FOUR THROUGH SIX
#### (Wire Fraud)
#### (18 U.S.C. §1343)

### THE SCHEME TO DEFRAUD

23.     From on or about May 1, 2014, to on or about December 31, 2014, defendant **CARLOS I. URESTI** devised and intended to devise a scheme to defraud Victim 1, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

24.     It was part of the scheme that **URESTI** agreed to solicit investors for Four Winds. As part of that agreement, **BATES** and Four Winds agreed to pay **URESTI**, among other things,

11

a commission of 3% for investments secured by **URESTI** in Four Winds and 10% of the profits generated by that investment and 20% of the profits for any subsequent investment.

25.     Among other investors, **URESTI** solicited his legal client, Victim 1.   **URESTI** misled Victim 1 into believing that **URESTI** was also considering investing in Four Winds. **URESTI** never invested in Four Winds.   **URESTI** told Victim 1 that her investment would obtain a better return with Four Winds than with her current investments.   **URESTI** also failed to disclose the material fact in connection with Victim 1's investment in Four Winds that **URESTI** would be paid a percentage of profits from Victim 1's investment.

26.     On or about May 22, 2014, **BATES** (using **stanbates10@yahoo.com**) emailed **URESTI** (using **Carlos@urestilaw.com**) Four Winds' standard Joint Venture Agreement for investors which set forth the profit share between the investor and Four Winds as 50/50. **URESTI** and **BATES** modified the standard Four Winds' JVA for Victim 1 to change the profit split to 60/40 between Four Winds (60%) and Victim 1 (40%).   **URESTI** never informed Victim 1 that the standard Four Winds JVA envisioned a 50/50 profit share.

27.     On or about June 11, 2014, Victim 1 signed a Joint Venture Agreement in which Four Winds and Victim 1 formed a joint venture called FWL-DC.   Ownership (and hence profits) of the JVA were divided 60% to Four Winds and 40% to Victim 1.   On or about June 18, 2014, Victim 1 signed a "Memorandum of Understanding" ("MOU") between Four Winds and Victim 1, which solidified the terms of the earlier JVA.   Neither the JVA nor the MOU disclosed **URESTI**'s commission or profit sharing.

28.     On June 19, 2014, **URESTI**'s consulting company, T.P.S., and Four Winds entered into a contract called "Joint Venture Agreement" which gave T.P.S. "6% Net Profit of

FWL-DC." The Agreement further stated that if Victim 1 invested more funds in FWL-DC, then T.P.S. would receive an increase in the net profit up to 20%. **URESTI** did not provide or otherwise inform Victim 1 of **URESTI** and T.P.S.' agreement with Four Winds.

29.     On June 11, 2014, an **URESTI** associate entered into a similar agreement for "4% Net Profit of FWL-DC." This associate had previously introduced **URESTI** to **BATES**. **URESTI** did not provide or otherwise inform Victim 1 of this agreement.

30.     On or about June 16, 2014, Victim 1 wired $800,000 into the FWL-DC Chase Bank account #****7715 from her Lone Star Bank account #*****7107. On or about June 18, 2014, Four Winds paid **URESTI** was paid a "draw on profit sharing" in the form of a check made out to T.P.S. This check was deposited on or about July 22, 2014 into the "Uresti Law Firm PC" Chase account number *****3933. Between on or about June 18, 2014, and on or about February 5, 2015, **BATES** and Four Winds paid **URESTI** in excess of $115,000.

31.     On August 28, 2014, Victim 1 gave a cashier's check of $100,000 obtained from her Lone Star bank account #*****1517 to Four Winds which was deposited into the Four Winds Savings account at Chase bank (account #******7810). This brought Victim 1's total investment to $900,000.

32.     On or about the following dates, in the Western District of Texas and elsewhere, the Defendant,

### CARLOS I. URESTI (1),

having devised and intended to devise the aforesaid scheme, for the purpose of executing said scheme, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate

and foreign commerce by means of a wire communication, certain signs, signals and sounds to

and from the Western District of Texas, as described below.

| COUNT | DATE | ORIGINATING TRANSACTION | DESTINATION |
|-------|------|--------------------------|-------------|
| 4 | June 2, 2014 | Electronic message from **URESTI** using **Carlos@Urestilaw.com** | Email account of **BATES** at stanbates10@yahoo.com |
| 5 | June 16, 2014 | Electronic Funds Transfer (Wire) for $800,000 from Lone Star Bank account #*****7107 | FWL-DC, LLC Chase Bank account #*****7715 with a registered account address of 17319 San Pedro Ave, Suite 140, San Antonio, Texas |
| 6 | August 28, 2014 | Lone Star Bank cashier's check for $100,000 payable to FWLL, LLC | FWLL, LLC Chase Bank account #******7810 with a registered account address of 17319 San Pedro Ave, Suite 140, San Antonio, Texas |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN
### (Wire Fraud)
### (18 U.S.C. §1343)

33.     Count Seven incorporates Paragraphs 1 through 32 by reference as though fully

realleged and restated herein.

34.     On or about June 9, 2014, in the Western District of Texas and elsewhere, the

Defendant,

**STANLEY P. BATES (2);**

with intent to defraud Victim 2, Victim 3, and Victim 4, having devised and intending to devise a

scheme and artifice to defraud, and for obtaining money and property by means of false and

fraudulent pretenses, representations, and promises, the manner and means of which are set out

in  paragraphs 1-32 above, for the purpose of executing the scheme and artifice, transmitted and

caused to be transmitted by means of wire, radio and television communication in interstate and

14

foreign commerce certain writings, signs, signals, pictures, and sounds, specifically an electronic

mail message from **stanbates10@yahoo.com** to investors, potential investors, and **URESTI** at

**Carlos@Urestilaw.com,** which electronic mail message contained an altered and false bank

statement.

### COUNT EIGHT
**(Conspiracy to Launder Monetary Instruments)**
**(18 U.S.C. §§1956(h) & 1957)**

35.     Beginning in or about February 1, 2014, and continuing until on or about December

31 2015, in the Western District of Texas, and elsewhere, the Defendants,

**CARLOS I. URESTI (1);**
**STANLEY P. BATES (2); and**
**GARY L. CAIN (3);**

did intentionally and knowingly combine, conspire, confederate, and agree together and with

others known and unknown to the Grand Jury, to knowingly engage and attempt to engage, in

monetary transactions by, through or to a financial institution, affecting interstate and foreign

commerce, in criminally derived property of a value greater than $10,000, such property having

been derived from a specified unlawful activity, to wit: Wire Fraud in violation of 18 U.S.C. §1343,

in violation of Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Section 1956(h).

### COUNTS NINE THROUGH NINETEEN
**(Engaging in Monetary Transactions in Property**
**Derived from Specified Unlawful Activity)**
**(18 U.S.C. §1957)**

36.     Counts Nine through Nineteen incorporate Paragraphs 1 through 35 by reference

as though fully realleged and restated herein.

37.     Defendants **URESTI, BATES,** and **CAIN** utilized, among others, the following

federally insured financial institutions and accounts to conduct financial transactions:

(a)     Chase Bank account #******3941 owned by the Uresti Law Firm PC
        IOLTA Trust Account;

(b)     Chase Bank account #*****8761 owned by FWLL, LLC;

(c)     Frost Bank account #*****2435 owned by FWLL, LLC;

(d)     Chase Bank account #*****7715 owned by FWL-DC, LLC;

(e)     Security Services Bank account #******5071 owned by Trinity;

(f)     Security Services Bank account #******5000 owned by Trinity;

(g)     Chase Bank account #******7810 owned by FWLL, LLC;

On or about the dates set forth below for the Count listed below, in the Western District
of Texas, and elsewhere, the Defendants did knowingly engage and attempt to engage in the
following monetary transactions by, through, or to a financial institution, affecting interstate or
foreign commerce, in criminally derived property of a value greater than $10,000, that is the
withdrawal, deposit, and transfer of funds from and to the financial institutions identified below,
such property having been derived from a specified unlawful activity, that is, Wire Fraud in
violation of 18 U.S.C. §1343.

| Count | Defendant | On or About Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 9 | **BATES** | June 23, 2014 | Transferred or caused to be transferred $700,000 from Chase Bank account #*****7715 owned by FWL-DC, LLC into Chase Bank account #*****8761 owned by FWLL, LLC; |
| 10 | **BATES** | June 25, 2014 | Issued or caused to be issued Bank Check No 5096 for $40,000 payable to URESTI Law Firm drawn on Chase Bank account #*****8761 owned by FWLL, LLC; |
| 11 | **URESTI** | June 26, 2014 | Deposited or caused to be deposited Bank Check No 5096 for $40,000 payable to Uresti Law Firm drawn on Chase Bank account #*****8761 owned by FWLL, LLC into Chase Bank account #******3941 owned by the Uresti Law Firm PC IOLTA Trust Account |

| 12 | BATES | August 28, 2014 | Deposited or caused to be deposited Cashier's Check No 339268 for $100,000 drawn on Lone Star National Bank into Chase Bank account #******7810 owned by Four Winds |
|----|-------|-----------------|---|
| 13 | CAIN | February 7, 2015, | Deposited or caused to be deposited Bank Check No 1187 for $15,000 payable to TGFC, LLC drawn on Frost Bank account #*****2435 owned by FWLL, LLC into Security Services Bank account #******5000 owned by Trinity |
| 14 | CAIN | February 27, 2015 | Deposited or caused to be deposited Bank Check No 1237 for $15,000 payable to TGFC, LLC drawn on Frost Bank account #*****2435 owned by FWLL, LLC into  Security Services Bank account #******5000 owned by Trinity |
| 15 | CAIN | March 10, 2015 | Deposited or caused to be deposited Bank Check No 1252 for $15,000 payable to TGFC, LLC drawn on Frost Bank account #*****2435 owned by FWLL, LLC into  Security Services Bank account #******5000 owned by Trinity |
| 16 | CAIN | March 25, 2015 | Deposited or caused to be deposited Bank Check No 1286 for $15,000 payable to TGFC, LLC drawn on Frost Bank account #*****2435 owned by FWLL, LLC into  Security Services Bank account #******5000 owned by Trinity |
| 17 | CAIN | April 11, 2015 | Deposited or caused to be deposited Cashier's Check No 002015546 for $15,000 payable to TGFC, LLC drawn on Frost Bank into  Security Services Bank account #******5000 owned by Trinity |
| 18 | CAIN | April 16, 2015 | Deposited or caused to be deposited Cashier's Check No 022015545 for $45,000 payable to TGFC, LLC drawn on Frost Bank into  Security Services Bank account #******5000 owned by Trinity |
| 19 | CAIN | May 15, 2015 | Deposited or caused to be deposited Bank Check No 1373 for $15,000 payable to TGFC, LLC drawn on Frost Bank account #*****2435 owned by FWLL, LLC into  Security Services Bank account #******5000 owned by Trinity |

All in violation of Title 18, United States Code, Section 1957.

## COUNTS TWENTY THROUGH TWENTY-ONE
### (Securities Fraud)
### (15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2)

38.     Investments in Four Winds were securities, as defined by the securities laws of the United States.  Specifically, those Joint Venture Agreements and Memorandum of Understandings were investment contracts and thus securities, because the investors invested money in a common enterprise and were led to expect profits solely from the efforts of the Defendants and persons associated with the Defendants.

39.     As to Counts Twenty and Twenty-One below, in the Western District of Texas and elsewhere, the Defendants,

### CARLOS I. URESTI (1), and
### STANLEY P. BATES (2),

acting both directly and by and through each other and by and through persons known and unknown to the Grand Jury, willfully, knowingly, and with intent to defraud, by use of the mails and means and instrumentalities of interstate commerce, directly and indirectly, in connection with sales of interests in Joint Venture Agreements described below:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts and omitted to state material facts that were necessary in order to make statements that were made not misleading in light of the circumstances under which the statements were made; and

(c)     engaged in acts, practices and courses of business that operated and would operate as a fraud and deceit on a person,

in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 and all as alleged in paragraphs 1-38, which are incorporated herein by reference.

40.     As to Count Twenty and Count Twenty-One below,

**CARLOS I. URESTI (1), and**
**STANLEY P. BATES (2),**

acting both directly and by and through each other and by and through persons known and

unknown to the Grand Jury, sold and solicited interests and securities through the Joint Venture

Agreements with Four Winds on the dates stated below.

| COUNT | ON OR ABOUT DATE | INVESTOR | JVA |
|-------|------------------|----------|-----|
| 20 | June 11, 2014 | Victim 1 | FWL-DC, LLC |
| 21 | August 12, 2014 | Victims 2-4 | FWL-MX, LLC |

All in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.

**COUNT TWENTY-TWO**
**(Unregistered Securities Broker)**
**(15 U.S.C. §§ 78o(a)(1) & 78ff)**

41.     Count Twenty-Two incorporates by reference, as if fully set forth herein,

paragraphs 1-40 as set forth above.

42.     Between on or about May 1, 2014, and May 31, 2015, in the Western District of

Texas and elsewhere, the Defendant,

**CARLOS I. URESTI (1),**

was not registered with the United States Securities and Exchange Commission as a broker or

dealer in accordance with subsection (b) of Section 15 of the Securities and Exchange Act of

1934 (15 U.S.C. § 78o(b)), and did knowingly and willfully make use of the means and

instrumentalities of interstate commerce to effect transactions in and to induce and attempt to

induce the purchase and sale of securities by recruiting and soliciting individuals to invest into

Four Winds.

All in violation of Title 15, United States Code, Sections 78o(a)(1) & 78ff.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
### [*See* Fed. R. Crim. P. 32.2]

This Notice of Demand for Forfeiture includes but is not limited to the property described

below.

## I.
### Wire Fraud Violations and Forfeiture Statutes
### [Title 18 U.S.C. §§ 1343 and 1349; subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the foregoing criminal violations set forth in Counts One through Five, the

United States of America gives notice to Defendants of its intent to seek the forfeiture of property

upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made

applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states:

> **Title 18 U.S.C. § 981.**
>> **(a)(1)**  The following property is subject to forfeiture to the United States:
>>> * * *
>>> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. §
1956(c)(7).

## II.
### Money Laundering Violations and Forfeiture Statutes
### [Title 18 U.S.C. §§ 1956(h) and 1957; subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violations set forth in Counts Six through Seventeen,

the United States of America gives notice to Defendants of its intent to seek the forfeiture of

property upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which

states:      **§ 982. Criminal forfeiture**

> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957 . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

### III.
### Securities Fraud Violations and Forfeiture Statutes
### [Title 15 U.S.C. § 78ff; subject to forfeiture pursuant to Title 18
### U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the foregoing criminal violations set forth in Counts Eighteen and Nineteen, the United States of America gives notice to Defendants of its intent to seek the forfeiture of property upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), which states:   **Title 18 U.S.C. § 981.**

> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Securities Fraud is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. § 1956(c)(7).

### IV.
### Money Judgment

An amount of money which represents the amount of proceeds obtained directly or indirectly as a result of the violations set forth above for which all Defendants are jointly and severally liable.

### V.
### Substitute Assets

If any of the property described above, as a result of any act or omission of Defendants:

a.    cannot be located upon the exercise of due diligence;
b.    has been transferred or sold to, or deposited with, a third person;
c.    has been placed beyond the jurisdiction of the Court;
d.    has been substantially diminished in value; or
e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek the forfeiture of any other property owned by Defendants up to the value of the Money Judgment as substitute assets pursuant to Fed. R. Crim. P. 32.2 and Title 21 U.S.C. § 853(p).

A TRUE BILL



FOREPERSON OF THE GRAND JURY

RICHARD L. DURBIN, JR.
United States Attorney

By: _____
JOSEPH E. BLACKWELL
Assistant United States Attorney

_____
MARK T. ROOMBERG
Assistant United States Attorney

22