IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BATES ENERGY OIL & GAS, LLC, | § § § | |
| PLAINTIFF | § § | |
| V. | § § | CIVIL ACTION NO. SA-17-CV-00808-XR |
| COMPLETE OIL FIELD SERVICES, LLC AND SAM TAYLOR, | § § § § | |
| DEFENDANTS | § | |

### COUNTER-DEFENDANT DEWAYNE D. NAUMANN'S
### MOTION TO DISMISS THIRD AMENDED COUNTERCLAIM

Counter-Defendant Dewayne D. Naumann files this Motion to Dismiss Third Amended Counterclaim, showing the Court as follows:

### Introduction

By its First Amended Counterclaim, Defendant Complete Oil Field Services, LLC ("COFS") sought to hold Dewayne D. Naumann personally liable for actions taken solely in his role as a representative of Counter-defendant Equity Liaison Company ("ELC"). For that reason, the Court granted Mr. Naumann's motion to dismiss the claims against him. *See* January 24, 2018 text order. COFS has now filed a Third Amended Counterclaim[1] which recites some of the exact same facts and allegations against Mr. Naumann that were previously dismissed. COFS has still failed to plead any facts to support Mr. Naumann's personal liability and has failed to comply with its pleading obligations in other ways. Thus, COFS's claims against Mr. Naumann personally should be dismissed.

---

[1] It does not appear from the docket sheet that COFS filed a second amended counterclaim.

**Facts**[2]

COFS was created for the sole purpose of acquiring frac sand for a single buyer, ProPetro Servicing, Inc. ("ProPetro"). Docket No. 68 ¶¶ 18, 20. COFS did not produce frac sand and had no relationship with any frac sand provider. *Id.* ¶ 22. ProPetro nevertheless entered into an agreement with COFS on April 13, 2017, pursuant to which COFS would procure frac sand for ProPetro. *Id.* ¶ 20 & Ex. 1. ProPetro agreed to deposit $4 million into an escrow account to pay COFS's eventual sand supplier for purchase and delivery of sand. *Id.* ¶ 35.

COFS conducted research into frac sand providers. *Id.* ¶ 22. One potential provider was Bates Energy, which was managed by Stanley Bates. *Id.* ¶¶ 22-26. COFS was or became aware that Mr. Bates had a "reputation as an unscrupulous businessman" and COFS became aware of "[p]ublic allegations of improper conduct" by Mr. Bates. *Id.* ¶¶ 24, 30. Rather than searching for a sand supplier with a cleaner background, or sourcing sand directly from producers, COFS decided to "move[] forward" with Bates Energy. *Id.* ¶ 30. COFS entered a Memorandum of Understanding (Operating Agreement) ("MOU") with Bates Energy Oil & Gas, LLC ("Bates Energy") on or about April 18, 2017, pursuant to which Bates Energy agreed to deliver frac sand

---

[2] The facts recited herein primarily come from COFS's Third Amended Counterclaim and are generally assumed to be true for purposes of this motion to dismiss. *See Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016). Where, however, the allegations in the Third Amended Counterclaim regarding the documents attached thereto are inconsistent with the plain language of the documents, it is the documents that control and are cited herein. *See, e.g., Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) (explaining that at the motion to dismiss stage, when the allegations in a pleading are inconsistent with the terms of a document attached as an exhibit, the terms of the document control); *Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (explaining that in reviewing a motion to dismiss "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint"). In any event, by reciting these facts, Naumann does not intend to admit that these facts are accurate or otherwise waive any challenges to the accuracy of these facts or the conclusions COFS alleges flow from these facts.

to COFS and COFS agreed to accept delivery of and pay for frac sand. *Id.* ¶¶ 27-29. COFS would then transport the sand to ProPetro. *Id.* ¶¶ 29, 35.

Bates Energy and COFS agreed to set up two escrow accounts – one with Amegy Bank, with a deposit of $3 million and one with ELC with a deposit of $1 million. *Id.* ¶ 35. COFS, Bates Energy, and ELC entered into an April 14, 2017 Escrow and Disbursement Agreement (the "Escrow Agreement"), which contemplated the deposit of $1 million. *Id.* ¶ 36 & Ex. 4.

Under the agreement between ProPetro and COFS, COFS's sand supplier would have the right to draw down on the escrowed funds "upon verification by independent escrow agent, to pay for the initial purchases of Materials included in [the] agreement." *Id.* at Ex. 1 ¶ 5. The MOU likewise provided for an escrow account whereby Bates Energy, as the sand supplier, or a substitute, could draw down on the $4 million deposited by ProPetro.[3] *Id.* ¶ 37. The first 50% of each purchase would be withdrawn upon delivery of a bill of lading for the sand and the second 50% once "the material is loaded into the COFS or designated trucking company, and the BOL of the load-out are issued with the final invoice." *Id.* at Ex. 3 ¶ 3.

Under the express terms of the Escrow Agreement, if the MOU was terminated, ELC was obligated to return the balance of the funds in the escrow account to COFS unless "a controversy" arose among the parties, in which case ELC had the right to institute an interpleader "to determine the rights of the parties." *Id.* ¶ 41 and Ex. 4 ¶ 2.2(E). In fact, a controversy did arise between COFS and Bates Energy. Bates Energy sued COFS in state court alleging that COFS had breached its agreement with Bates Energy and tortuously interfered with Bates Energy's business relationships and obtained a temporary restraining order precluding COFS's access to the

---

[3] While COFS alleges that the agreement between it and Bates Energy called for the escrow agent to audit delivery documentation before releasing funds, nothing in the MOU references an audit by the escrow agent. *Compare* Docket No. 68 ¶¶ 32 & 38 *with id.* at Ex. 2.

escrowed funds. Docket No. 1-1. COFS counterclaimed, alleging that Bates Energy failed to perform under the MOU and had received approximately $40,000 of escrowed funds without actually delivering sand to COFS. *Id.* COFS then removed the case to this Court and eventually filed a First Amended Counterclaim, adding claims against ELC and Mr. Naumann, individually.

### COFS's Claims Against Mr. Naumann

Throughout its counterclaim, COFS refers to "ELC/Naumann" as a single party. *See, e.g., id.* ¶¶ 64-65, 89-94. COFS nevertheless alleges most of its claims against Mr. Naumann in his individual capacity. First, COFS names Mr. Naumann as a defendant to its fraud and conspiracy to commit fraud claims. *Id.* ¶¶ 125-132. Second, COFS names Mr. Naumann as a defendant to its claim for theft and conspiracy to commit theft under the Texas Theft Liability Act. *Id.* ¶¶ 145-148. Third, COFS names Mr. Naumann as a defendant to its claims alleging breach of fiduciary duty. *Id.* ¶¶ 149-156. Fourth, COFS names Mr. Naumann as a defendant to its negligent misrepresentation claim. *Id.* ¶¶ 157-168. Fifth, COFS names Mr. Naumann as a defendant to its equitable accounting claim. *Id.* ¶¶ 159-160. Finally, COFS names Mr. Naumann as a defendant to its claim for restitution or money had and received. *Id.* ¶¶ 161-163. COFS also purports to seek attorneys' fees from "all Counter-Defendants" but ties that request for relief solely to its breach of contract claim against ELC. *Id.* ¶¶ 164-165.

### Arguments and Authorities

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (internal citations and quotations omitted). While the allegations need not be overly detailed, a plaintiff's pleadings must still provide the grounds for entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "naked assertions," "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to survive a Rule 12(b)(6) motion). "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

COFS fails to state a claim for relief against Mr. Naumann individually. Every action by Mr. Naumann that COFS complains of was taken by Mr. Naumann in his capacity as a principal of ELC. COFS fails to plead fraud with the requisite particularity. COFS fails to identify which defendants took which actions sufficient to give fair notice under its Texas Theft Liability Act and negligent misrepresentation claims. COFS fails to state a claim for breach of fiduciary duty against Mr. Naumann because it fails to allege that Mr. Naumann personally acted as an escrow agent or allege any other facts sufficient to render Mr. Naumann liable for breach of fiduciary duty in his personal capacity. COFS fails to plead a relationship between COFS and Mr. Naumann in his individual capacity sufficient to support a negligent misrepresentation claim and this same lack of relationship renders Mr. Naumann an improper defendant to a claim for equitable accounting. COFS's claim for "restitution or money had and received" must be dismissed because COFS has failed to identify any money that Mr. Naumann personally received and why, exactly, that money belongs to COFS. COFS has failed to plead sufficient facts to state a claim for veil piercing and has failed to plead any facts rendering Mr. Naumann liable on COFS's claim for attorneys' fees.

### I. The Third Amended Counterclaim Does Not Identify a Relationship Between COFS and Mr. Naumann, Individually

The Escrow Agreement is an agreement between COFS, Bates Energy, and ELC. *See* Exhibit A at 1 (identifying parties) and 5 (signature page).[4]  Mr. Naumann signed the Escrow Agreement only as the managing member of ELC and did not personally undertake any obligations under the Escrow Agreement. *Id.*  His signature thus does not render him a party to the agreement. *See Vessel Statistics, Inc. v. Albert Garaudy & Associates, Inc.,* CIV.A. H-09-1685, 2011 WL 843904, at *4 (S.D. Tex. Mar. 7, 2011) ("An agent is not liable for the contract of its principal if the contracting party knows both that the agent is acting on behalf of a principal and the identity of that principal."); *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (holding that "officers of a corporation are not personally liable on the corporation's contracts if they do not purport to bind themselves individually, they disclose their representative capacity, and they identify their principal").  While Mr. Naumann is identified in the Escrow Agreement as the "Principal" of ELC, that is expressly for notice purposes only. Exhibit A ¶ 3.4.

### II. COFS Fails to Plead Fraud by Mr. Naumann with Particularity

Allegations of fraud must be pled with particularity. Fed. R. Civ. P. 9(b).  Compliance with this requirement requires identification of the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir.

---

[4] The version of the Escrow Agreement attached to COFS's Third Amended Counterclaim is, like the version that was attached to COFS's First Amended Counterclaim, missing a page. Exhibit A is a complete copy of the agreement.  Because it is referenced in COFS's Third Amended Counterclaim and central to COFS's claims against Mr. Naumann, it may be considered on a motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

1994) (describing Rule 9(b) as requiring a plaintiff alleging fraud to identify "who, what, when, where, and how"). Failure to comply with this particularity requirement warrants dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id*.

The only fraud allegations against "ELC/Naumann" is that they "fraudulently induced COFS to enter into the ELC escrow agreement" through an exchange of emails "on or about April 14, 2017," which resulted in certain language being included in the ELC escrow agreement and that they fraudulently induced COFS into entering "other agreements." Docket No. 68 ¶¶ 94, 127. The alleged specific representations are:

> a. That they would not remove COFS's funds from the escrow account without notice to and the consent of COFS.
> b. That sand was delivered with proper support documentation.
> c. That they would properly require, account for and audit supporting documentation for any sand deliveries.

*Id.* ¶ 127. COFS has failed to identify the "other agreements." COFS has failed to allege what Naumann, individually, obtained by any of these alleged misrepresentations. COFS has failed to allege time or place of any representation regarding sand delivery or that Naumann/ELC would "require, account for any audit supporting documentation." COFS's fraudulent inducement claim against Naumann should be dismissed for failure to comply with Rule 9(b). And because the underlying claim fails to comply with Rule 9(b), the related conspiracy claim fails as well. *Norwood v. Raytheon Co.*, EP-04-CA-127 PRM, 2006 WL 2833803, at *3 (W.D. Tex. Sept. 19, 2006) ("Because the Court has found that Plaintiffs fail to state the underlying allegations of fraud with the required specificity, the Court concludes that Plaintiffs' civil conspiracy claims must also be dismissed.").

**III.     The Complaint Fails to State a Claim Against Mr. Naumann for Theft**

Regarding its claim under the Texas Theft Liability Act, COFS alleges "All Counter-Defendants, without Defendant/Counter-Plaintiff's consent, knowingly took, accepted and retained funds held and belonging to Defendant/Counter-Plaintiff, causing Defendant/Counter-Plaintiff to sustain damages as a result of the theft." Docket No. 68 ¶ 146. COFS does not identify which section of the Texas Penal Code forms the basis of this claim. More importantly, COFS does not identify which defendant undertook which action alleged to violate the Texas Penal Code. The claim must therefore be dismissed. *See, e.g., Washington v. Patterson-UTI Energy, Inc.*, 5:16-CV-130-RP, 2016 WL 3081060, at *3 (W.D. Tex. May 31, 2016) (holding that lumping numerous defendants together fails to comply with Rule 8's fair notice standard); *Del Castillo v. PMI Holdings N. Am. Inc.*, 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) ("[L]umping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2) and 12(b)(6)").

**IV.     The Complaint Fails to State a Claim Against Mr. Naumann for Breach of Fiduciary Duty**

COFS next alleges, in Count 5, that "ELC/Naumann" owes COFS fiduciary duties "as escrow agents under the Escrow Agreement." Docket No. 68 ¶¶ 152. As discussed above, Mr. Naumann is not a party to the Escrow Agreement or an escrow agent under that agreement. COFS alleges no facts that would render Mr. Naumann an escrow agent in his personal capacity. COFS complains only of "failing to (1) release the funds to COFS in accordance with the terms of the Escrow Agreement; (2) disclose activity in and related to the escrow account; and (3) pay the funds only to COFS, who is entitled to the funds." *Id.* ¶ 154. The Court has previously dismissed COFS's claims against Naumann individually based on these exact allegations. *See* January 24, 2018 text order. Each of these actions relate to duties that arise because of COFS's deposit of

funds with ELC and the terms of the Escrow Agreement, not to actions taken by Mr. Naumann in his individual capacity. COFS has failed to allege facts sufficient to cause Mr. Naumann to be personally liable for breach of fiduciary duty. Thus, COFS has failed to state a claim against Mr. Naumann for breach of fiduciary duty and that claim should be dismissed.

**V.    The Complaint Fails to State a Claim Against Mr. Naumann for Negligent Misrepresentation**

For the same reason that COFS does not state a claim against Mr. Naumann individually for breach of fiduciary duty, it does not state a claim for negligent misrepresentation. While a corporation's officer or agent may be liable for his own intentional or knowing torts, individual liability for negligence "arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). COFS has failed to allege the existence of any relationship between it and Mr. Naumann independent of the relationship between COFS and ELC and has failed to allege facts sufficient to establish that Mr. Naumann owed COFS a duty of reasonable care independent of the duty owed by ELC to COFS. COFS's claim against Mr. Naumann for negligent misrepresentation should therefore be dismissed.

The claim should also be dismissed because it, like COFS's theft claim, impermissibly lumps the various defendants together, alleging that "[e]ach of" the counter-defendants made unspecified "false information." Docket No. 68 ¶ 158. The complaint thus fails to give fair notice of COFS's claim. *See, e.g., Washington*, 5:16-CV-130-RP, 2016 WL 3081060, at *3; *Del Castillo*, 4:14-CV-03435, 2016 WL 3745953, at *13.

## VI. The Complaint Fails to State a Claim Against Mr. Naumann for An Equitable Accounting

COFS's next claim against Mr. Naumann is Count 7 for an equitable accounting. Specifically, COFS pleads:

> Defendant/Counter-Plaintiff is entitled to an order requiring an accurate accounting of the ELC escrow account, and any and all other accounts in which any COFS funds were deposited, transferred, disbursed or withdrawn from, removed or altered in any manner, and to disgorge any profits or amounts removed therefrom, such that the balance is restored to its original balance of $1,000,000.

Docket No. 68 ¶ 160. "An equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law. When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). An equitable accounting is not available from a party with which the plaintiff has no contractual or fiduciary relationship. *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.—Tyler 1983, writ ref'd n.r.e.).

By its own terms this claim does not seek relief against Mr. Naumann. The Court previously dismissed this same claim against Mr. Naumann. *See* January 24, 2018 text order. Because COFS has no contractual or fiduciary relationship with Mr. Naumann individually, its claim for equitable accounting against Mr. Naumann should be dismissed.

The claim should also be dismissed because COFS has failed to allege that that the information it seeks is complex or that it would be unable to obtain the information it seeks through discovery. This failure to allege essential elements of the claim is fatal. *See Williams v. Wells Fargo Bank, N.A.*, 560 Fed. Appx. 233, 243 (5th Cir. 2014) (affirming dismissal of claim for an accounting when the plaintiff failed to allege facts suggesting the information sought was

complex); *Thomas v. EMC Mortg. Corp.*, 499 Fed. Appx. 337, 343 (5th Cir. 2012) (holding that a bare assertion of an entitlement to an accounting is insufficient); *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 738 (E.D. Tex. 2011) ("Plaintiffs' bare assertion that they are entitled to accounting does not meet the standard of plausibility because they have not alleged that they are unable to attain pertinent information through ordinary discovery procedures.").

### VII. The Complaint Fails to State a Claim Against Mr. Naumann for Restitution or Money Had and Received

COFS next alleges that Mr. Naumann is liable for restitution or money had and received. Docket No. 68 ¶¶ 161-163. A plaintiff bringing a claim for money had and received under Texas law must show that the "'defendant holds money which in equity and good conscience belongs to him.'" *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951) (quoting 58 C.J.S., MONEY RECEIVED, § 4a, p. 913). "This action is not premised on wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ).

COFS's claim for "restitution or money had and received" merely recites this standard, alleging:

> All Counter-Defendants received escrow money that in equity and good conscience rightfully belongs to COFS as trustee for ProPetro. No other party holds a just claim to those funds in that all Counter-Defendants knew that the sole purpose of the escrow account was the procurement of frac sand and all Counter-Defendants know that zero frac sand has been delivered.

Docket No. 68 ¶ 162. While COFS incorporates its prior factual allegations into the cause of action, *id.* ¶ 161, there are no allegations elsewhere in the Third Amended Counterclaim to support this claim against Mr. Naumann. Specifically, COFS has failed to identify what money Mr. Naumann actually received individually and why, exactly, that money belongs to COFS. Even assuming, as one must at this stage, that money was wrongfully retained by ELC, that does not

place COFS's money in Mr. Naumann's pocket. There is no allegation that Mr. Naumann personally received anything, let alone something belonging to COFS. For these reasons, COFS's restitution or money had and received claim against Mr. Naumann should be dismissed for failure to state a claim upon which relief can be granted.

**VIII. The Complaint Fails to State a Claim Against Mr. Naumann Under a Veil Piercing Theory**

Perhaps recognizing the lack of allegations against Mr. Naumann in his individual capacity, COFS recites its intention to reach Mr. Naumann by piercing the corporate veil of ELC. Specifically, COFS claims in connection with its fraudulent inducement claim that "[b]oth ELC and Naumann individually are liable for these and other transgressions because Naumann is using the corporate form of ELC to perpetrate a fraud on COFS, and adherence to the corporate fiction would promote injustice and lead to an inequitable result." Docket No. 68 ¶ 94. Under the heading "Respondeat Superior and Ratification," COFS alleges, "In all cases, the individual named was acting on his own behalf, as well as in the course and scope of his employment or agency for the entity to which he or she was contracted. . . . Dwayne Naumann, as the only principal in ELC, was at all times acting both individually and in the course and scope of his employment for ELC" *Id.* ¶ 124.

The Texas Business Organizations Code permits personal liability against a shareholder, owner, or other type of member for the entity's contractual obligations only where a plaintiff alleges that the member used the corporate form "for the purpose of perpetrating . . . an actual fraud" on the other contracting party "for the direct personal benefit" of that member. Tex. Bus. Orgs. Code § 21.223(b). COFS has failed to allege any facts to support its conclusions sufficient to state a claim against Mr. Naumann in his individual capacity. Under Texas law, "alter ego or other similar theories may be used to pierce the corporate veil only if: (1) actual fraud is shown

and (2) it was perpetrated primarily for the direct personal benefit of the corporation's shareholder, beneficial owner, subscriber, or affiliate." *Viajes Gerpa, S.A. v. Fazeli*, 522 S.W.3d 524, 532 (Tex. App.—Houston [14th Dist.] 2016, pet. denied), reh'g denied (Mar. 14, 2017).  COFS has failed to allege that any wrongdoing by ELC was primarily for Mr. Naumann's direct personal benefit.  It is not enough to say that Mr. Naumann is the only principal of the company; COFS must allege more.  *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 388 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (finding insufficient evidence of direct personal benefit where record failed to show that defendant company owner deposited misappropriated funds in a personal account or used the funds to purchase personal items or pay personal debts); *Shook v. Walden,* 368 S.W.3d 604, 622 (Tex. App.—Austin 2012, pet. denied).  In the absence of sufficient facts to support its conclusory allegations, COFS's attempts to plead alter ego or veil piercing fails to state a claim.

**IX. The Complaint Fails to State a Claim Against Mr. Naumann for Attorneys' Fees**

COFS purports to bring a claim for attorneys' fees "against all Counter-Defendants," asserting that such fees are recoverable "pursuant to § 38.001 of the Texas Rules of Civil Procedure." Docket No. 68 ¶ 165.  First, no such provision exists.  *See generally,* Tex. R. Civ. P. 38, et seq.  Further, to the extent that COFS intended to assert the recovery of fees under section 38.001 of the Texas *Civil Practice & Remedies Code*, such pleading fails to state a claim because Mr. Naumann, as explained above, is not alleged to be a party to the Escrow Agreement.

## Conclusion and Prayer

COFS has failed to state a claim for relief against Mr. Naumann individually, who was not a party to the Escrow Agreement, took no complained-of actions in his individual capacity, and owed COFS no duties in his individual capacity.  COFS has failed to plead fraud with particularity,

has failed to give fair notice under its Texas Theft Liability Act and negligent misrepresentation claims, and has failed to allege facts to support required elements of its claims for equitable accounting, "restitution or money had and received," veil piercing, or attorneys' fees. COFS's claims against Mr. Naumann should therefore be dismissed.

WHEREFORE, Counter-Defendant Dewayne D. Naumann requests that the Court enter an order dismissing the claims against him and requests such other relief to which he is entitled.

> Respectfully submitted,
>
> **PULMAN, CAPPUCCIO & PULLEN, LLP**
> 2161 NW Military Highway, Suite 400
> San Antonio, Texas 78213
> www.pulmanlaw.com
> (210) 222-9494 Telephone
> (210) 892-1610 Facsimile
>
> By: */s/ Leslie Sara Hyman*
>    Leslie Sara Hyman
>    Texas State Bar No. 00798274
>    lhyman@pulmanlaw.com
>    Matthew McGowan
>    Texas State Bar No. 24098077
>    mmcgowan@pulmanlaw.com
>
> **ATTORNEYS FOR COUNTER-DEFENDANTS**
> **EQUITY LIAISON COMPANY AND**
> **DEWAYNE D. NAUMANN**

**CERTIFICATE OF SERVICE**

I certify that on the 18th day of June 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Lamont A. Jefferson
>LJefferson@jeffersoncano.com
>Lisa S. Barkley
>LBarkley@jeffersoncano.com
>JEFFERSON CANO
>112 East Pecan Street, Suite 1650
>San Antonio, Texas 78205

and that the following was served by regular mail:

>Bates Energy Oil & Gas, LLC
>3201 Cherry Ridge, Bldg. B, Ste. B210
>San Antonio, Texas 78230

>*/s/ Leslie Sara Hyman*
>Leslie Sara Hyman