IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BATES ENERGY OIL & GAS, LLC, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CIVIL ACTION NO. SA-17-CV-00808-XR |
| | § | |
| COMPLETE OIL FIELD SERVICES, LLC AND | § | |
| SAM TAYLOR, | § | |
| | § | |
| DEFENDANTS | § | |

**COUNTER-DEFENDANT EQUITY LIAISON COMPANY'S
MOTION TO DISMISS THIRD AMENDED COUNTERCLAIM**

Counter-Defendant Equity Liaison Company files this Motion to Dismiss Third Amended Counterclaim, showing the Court as follows:

**Introduction**

COFS's Third Amended Counterclaim[1] seeks to turn an alleged breach of contract into a vast conspiracy of tortious conduct by numerous defendants. COFS has failed to plead facts to support such claims against a counter-party to a contract. COFS's tort claims against ELC should therefore be dismissed. COFS's Texas Theft Liability Act and negligent misrepresentation claims should additionally be dismissed for failure to give fair notice and its claim for fraudulent inducement should be dismissed for failure to plead fraud with particularity.

---

[1] It does not appear from the docket sheet that COFS filed a second amended counterclaim.

**Facts[2]**

COFS was created for the sole purpose of acquiring frac sand for a single buyer, ProPetro Servicing, Inc. ("ProPetro").  Docket No. 68 ¶¶ 18, 20.  COFS did not produce frac sand and had no relationship with any frac sand provider.  *Id.* ¶ 22.  ProPetro nevertheless entered into an agreement with COFS on April 13, 2017, pursuant to which COFS would procure frac sand for ProPetro.  *Id.* ¶ 20 & Ex. 1.  ProPetro agreed to deposit $4 million into an escrow account to pay COFS's eventual sand supplier for purchase and delivery of sand.  *Id.* ¶ 35.

COFS conducted research into frac sand providers.  *Id.* ¶ 22.  One potential provider was Bates Energy, which was managed by Stanley Bates.  *Id.* ¶¶ 22-26.  COFS was or became aware that Mr. Bates had a "reputation as an unscrupulous businessman" and COFS became aware of "[p]ublic allegations of improper conduct" by Mr. Bates.  *Id.* ¶¶ 24, 30.  Rather than searching for a sand supplier with a cleaner background, or sourcing sand directly from producers, COFS decided to "move[] forward" with Bates Energy.  *Id.* ¶ 30.  COFS entered a Memorandum of Understanding (Operating Agreement) ("MOU") with Bates Energy Oil & Gas, LLC ("Bates Energy") on or about April 18, 2017, pursuant to which Bates Energy agreed to deliver frac sand

---

[2] The facts recited herein primarily come from COFS's Third Amended Counterclaim and are generally assumed to be true for purposes of this motion to dismiss.  *See Ibe*, 836 F.3d at 524.  Where, however, the allegations in the Third Amended Counterclaim regarding the documents attached thereto are inconsistent with the plain language of the documents, it is the documents that control and are cited herein.  *See, e.g., Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) (explaining that at the motion to dismiss stage, when the allegations in a pleading are inconsistent with the terms of a document attached as an exhibit, the terms of the document control); *Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (explaining that in reviewing a motion to dismiss "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint").  In any event, by reciting these facts, Naumann does not intend to admit that these facts are accurate or otherwise waive any challenges to the accuracy of these facts or the conclusions COFS alleges flow from these facts.

to COFS and COFS agreed to accept delivery of and pay for frac sand. *Id.* ¶¶ 27-29. COFS would then transport the sand to ProPetro. *Id.* ¶¶ 29, 35.

Bates Energy and COFS agreed to set up two escrow accounts – one with Amegy Bank, with a deposit of $3 million and one with ELC with a deposit of $1 million. *Id.* ¶ 35. COFS, Bates Energy, and ELC entered into an April 14, 2017 Escrow and Disbursement Agreement (the "Escrow Agreement"), which contemplated the deposit of $1 million. *Id.* ¶ 36 & Ex. 4.

Under the agreement between ProPetro and COFS, COFS's sand supplier would have the right to draw down on the escrowed funds "upon verification by independent escrow agent, to pay for the initial purchases of Materials included in [the] agreement." *Id.* at Ex. 1 ¶ 5. The MOU likewise provided for an escrow account whereby Bates Energy, as the sand supplier, or a substitute, could draw down on the $4 million deposited by ProPetro.[3] *Id.* ¶ 37. The first 50% of each purchase would be withdrawn upon delivery of a bill of lading for the sand and the second 50% once "the material is loaded into the COFS or designated trucking company, and the BOL of the load-out are issued with the final invoice." *Id.* at Ex. 3 ¶ 3.

Under the express terms of the Escrow Agreement, if the MOU was terminated, ELC was obligated to return the balance of the funds in the escrow account to COFS unless "a controversy" arose among the parties, in which case ELC had the right to institute an interpleader "to determine the rights of the parties." *Id.* ¶ 41 and Ex. 4 ¶ 2.2(E). In fact, a controversy did arise between COFS and Bates Energy. Bates Energy sued COFS in state court alleging that COFS had breached its agreement with Bates Energy and tortuously interfered with Bates Energy's business relationships and obtained a temporary restraining order precluding COFS's access to the

---

[3] While COFS alleges that the agreement between it and Bates Energy called for the escrow agent to audit delivery documentation before releasing funds, nothing in the MOU references an audit by the escrow agent. *Compare* Docket No. 68 ¶¶ 32 & 38 *with id.* at Ex. 2.

escrowed funds.  Docket No. 1-1.  COFS counterclaimed, alleging that Bates Energy failed to perform under the MOU and had received approximately $40,000 of escrowed funds without actually delivering sand to COFS.  *Id.*  COFS then removed the case to this Court and eventually filed a First Amended Counterclaim, adding claims against ELC and Mr. Naumann, individually, and has now filed a Third Amended Counterclaim.

### Arguments and Authorities

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (internal citations and quotations omitted).  While the allegations need not be overly detailed, a plaintiff's pleadings must still provide the grounds for entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "naked assertions," "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to survive a Rule 12(b)(6) motion).  "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

COFS fails to state tort claims against ELC.  The damage it seeks relate solely to damages caused by an alleged breach of contract.  In the alternative, COFS's claim for fraud should be dismissed for failure to plead fraud with particularity, its Texas Theft Liability Act and negligent misrepresentation claims should be dismissed for failure to give fair notice, and its equitable accounting claim should be dismissed for failure to plead the required elements.

I.      **COFS's Tort Claims Against ELC are Barred by the Economic Loss Rule**

The economic loss rule limits a plaintiff's ability to turn a breach of contract into a tort claims.  It applies in two related, but distinct situations.  First, the economic loss rule provides that where a plaintiff claims that the defendant's actions breached a duty that arises solely because the parties have contracted with one another, that plaintiff may recover only under a contract theory. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).  Second, "'the nature of the injury' may preclude plaintiffs from seeking relief in tort, and '[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.'"  *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986)).

Here, both applications of the economic loss rule are implicated.  COFS alleges that it and ELC are parties to a contract that ELC breached but nevertheless sues ELC for fraudulent inducement, theft, breach of fiduciary duty, negligent misrepresentation, and restitution or money had and received.  As to the claim for breach of fiduciary duty, COFS has not alleged facts that would give rise to a fiduciary duty from ELC to COFS apart from the contractual escrow relationship.  The economic loss rule thus bars that claim.  The remaining claims are barred by the economic loss rule because COFS has failed to identify any damages caused by ELC's alleged actions other than the loss of escrow funds that are the subject of the parties' contract.  Dismissal of COFS's tort claims against ELC is therefore proper.

II.     **COFS Fails to Plead Fraud Against ELC With Particularity**

Allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  Compliance with this requirement requires identification of the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that

person] obtained thereby." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (describing Rule 9(b) as requiring a plaintiff alleging fraud to identify "who, what, when, where, and how"). Failure to comply with this particularity requirement warrants dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.*

The only fraud allegations against "ELC/Naumann" is that they "fraudulently induced COFS to enter into the ELC escrow agreement" through an exchange of emails "on or about April 14, 2017," which resulted in certain language being included in the ELC escrow agreement and that they fraudulently induced COFS into entering "other agreements." Docket No. 68 ¶¶ 94, 127. The alleged specific representations are:

> a. That they would not remove COFS's funds from the escrow account without notice to and the consent of COFS.
> b. That sand was delivered with proper support documentation.
> c. That they would properly require, account for and audit supporting documentation for any sand deliveries.

*Id.* ¶ 127. COFS has failed to identify the "other agreements." COFS has failed to allege what ELC obtained by any of these alleged misrepresentations. COFS has failed to allege time or place of any representation regarding sand delivery or that Naumann/ELC would "require, account for any audit supporting documentation." COFS's fraudulent inducement claim against ELC should be dismissed for failure to comply with Rule 9(b). And because the underlying claim fails to comply with Rule 9(b), the related conspiracy claim fails as well. *Norwood v. Raytheon Co.*, EP-04-CA-127 PRM, 2006 WL 2833803, at *3 (W.D. Tex. Sept. 19, 2006) ("Because the Court has found that Plaintiffs fail to state the underlying allegations of fraud with the required specificity, the Court concludes that Plaintiffs' civil conspiracy claims must also be dismissed.").

### III.     The Complaint Fails to State a Claim Against ELC for Theft

Regarding its claim under the Texas Theft Liability Act, COFS alleges "All Counter-Defendants, without Defendant/Counter-Plaintiff's consent, knowingly took, accepted and retained funds held and belonging to Defendant/Counter-Plaintiff, causing Defendant/Counter-Plaintiff to sustain damages as a result of the theft." Docket No. 68 ¶ 146. COFS does not identify which section of the Texas Penal Code forms the basis of this claim. More importantly, COFS does not identify which defendant undertook which action alleged to violate the Texas Penal Code. The claim must therefore be dismissed. *See, e.g., Washington v. Patterson-UTI Energy, Inc.*, 5:16-CV-130-RP, 2016 WL 3081060, at *3 (W.D. Tex. May 31, 2016) (holding that lumping numerous defendants together fails to comply with Rule 8's fair notice standard); *Del Castillo v. PMI Holdings N. Am. Inc.*, 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) ("[L]umping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2) and 12(b)(6)").

### IV.     The Complaint Fails to State a Claim Against ELC for Negligent Misrepresentation

COFS's negligent misrepresentation claim likewise should be dismissed. It, like COFS's theft claim, impermissibly lumps the various defendants together, alleging that "[e]ach of" the counter-defendants made unspecified "false information." Docket No. 68 ¶ 158. The complaint thus fails to give fair notice of COFS's claim. *See, e.g., Washington*, 5:16-CV-130-RP, 2016 WL 3081060, at *3; *Del Castillo*, 4:14-CV-03435, 2016 WL 3745953, at *13.

### V.     The Complaint Fails to State a Claim Against ELC for An Equitable Accounting

COFS's next claim against ELC is Count 7 for an equitable accounting. Specifically, COFS pleads:

> Defendant/Counter-Plaintiff is entitled to an order requiring an accurate accounting
> of the ELC escrow account, and any and all other accounts in which any COFS

funds were deposited, transferred, disbursed or withdrawn from, removed or altered in any manner, and to disgorge any profits or amounts removed therefrom, such that the balance is restored to its original balance of $1,000,000.

Docket No. 68 ¶ 160.  "An equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law.  When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).  An equitable accounting is not available from a party with which the plaintiff has no contractual or fiduciary relationship.  *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.—Tyler 1983, writ ref'd n.r.e.).

COFS has failed to allege that that the information it seeks is complex or that it would be unable to obtain the information it seeks through discovery.  This failure to allege essential elements of the claim is fatal.  *See Williams v. Wells Fargo Bank, N.A.,* 560 Fed. Appx. 233, 243 (5th Cir. 2014) (affirming dismissal of claim for an accounting when the plaintiff failed to allege facts suggesting the information sought was complex); *Thomas v. EMC Mortg. Corp.*, 499 Fed. Appx. 337, 343 (5th Cir. 2012) (holding that a bare assertion of an entitlement to an accounting is insufficient); *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 738 (E.D. Tex. 2011) ("Plaintiffs' bare assertion that they are entitled to accounting does not meet the standard of plausibility because they have not alleged that they are unable to attain pertinent information through ordinary discovery procedures.").

## Conclusion and Prayer

COFS has failed to state a claim for relief against ELC arising in tort.  COFS seeks damages that are solely attributable to the alleged breach of the escrow agreement between ELC and COFS

and COFS has failed to allege that ELC owed it a fiduciary duty aside from the duty imposed by the escrow agreement.  COFS's tort claims are thus barred by the economic loss rule.  COFS has failed to plead fraud with particularity, has failed to properly distinguish between the various defendants to its theft and negligent misrepresentation claims, and has failed to allege facts to support required elements of its claims for equitable accounting.  COFS's claims against ELC should therefore be dismissed.

WHEREFORE, Counter-Defendant Equity Liaison Company requests that the Court enter an order dismissing the claims against it and requests such other relief to which it is entitled.

Respectfully submitted,

PULMAN, CAPPUCCIO & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: /s/ Leslie Sara Hyman
    Leslie Sara Hyman
    Texas State Bar No. 00798274
    lhyman@pulmanlaw.com
    Matthew McGowan
    Texas State Bar No. 24098077
    mmcgowan@pulmanlaw.com

ATTORNEYS FOR COUNTER-DEFENDANTS
EQUITY LIAISON COMPANY AND
DEWAYNE D. NAUMANN

<u>C</u><small><u>ERTIFICATE OF</u></small> <u>S</u><small><u>ERVICE</u></small>

I certify that on the 18th day of June 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> Lamont A. Jefferson
> LJefferson@jeffersoncano.com
> Lisa S. Barkley
> LBarkley@jeffersoncano.com
> JEFFERSON CANO
> 112 East Pecan Street, Suite 1650
> San Antonio, Texas 78205

and that the following was served by regular mail:

> Bates Energy Oil & Gas, LLC
> 3201 Cherry Ridge, Bldg. B, Ste. B210
> San Antonio, Texas 78230

> /s/ Leslie Sara Hyman
> Leslie Sara Hyman