## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **BATES ENERGY OIL & GAS LLC** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| vs. § | **Civil Action No. 17-cv-00808-XR** |
| § | |
| **COMPLETE OIL FIELD SERVICES LLC** § | |
| **and SAM TAYLOR** § | |
| § | |
| **Defendants** § | |

### COUNTER DEFENDANT TIER 1 SANDS LLC'S PROPOSED FINDING OF FACTS AND CONCLUSION OF LAW

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Now Comes Counter Defendant Tier 1 Sands LLC and files the following Proposed Findings of Facts and Conclusions of Law:

### I.     Findings of Facts.

1. Tiers 1 Sands LLC ("Tier 1') is in the business of selling and delivering frac sand. Trial Transcript Vol. 1 page 125 Line 21-23; Trial Transcript Vol. 2 page 29 Line 2-7;

2. Tier 1 Sands offered to sell and deliver sand to Frac Sand Unlimited LLC ("FSU"). Trial Transcript Vol. 2 page 29 Line 2-7;

3. Tier 1 issued purchase orders to Frac Sand Unlimited ("FSU"). Ex. CP-47 and Ex. CP-48;

4. Tier 1 required full payment for the sand prior to delivery by Tier 1. Trial Transcript Vol. 2 page 11 Line 12-18;

5. Tier 1 was paid pursuant to the purchase orders; Ex CP-66;

6. Tier 1 delivered the sand to FSU.  Trial Transcript Vol. 2 page 13 Line 8-9;

1

7. Complete Oil Services LLC ("COFS") had knowledge of Stan Bates' legal problems and was instructed to be cautious. Trial Transcript Vol. 1 page 88 Line 2-9.

8. The escrow account was funded by ProPetro Services Inc.("ProPetro") and not by any money belonging to COFS. Ex CP-66;

## II. Conclusions of Law

**Applicable Law-Money Had and Received**

Under Texas law, "[t]o establish a cause of action for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Brown v. Wells Fargo Bank, N.A*., No. H- 13-3228, 2015 WL 926573, at *5 (S.D. Tex. Mar. 4, 2015); see also *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc*., 473 S.W.3d 296, 302 n.4 (Tex. 2015). In general, "[o]ne who acquires stolen property does not acquire its title. Title remains with the original owner, who can recover the property or its value from whomever has received it." *Matter of Approximately $80 ,600.00*, 537 S.W.3d 207, 211 (Tex.App.— Houston [1st Dist.] 2017, pet. filed). Money, however, is the exception to this general rule. Id. at 211-12; see also *Sinclair Houston Fed. Credit Union v. Hendricks*, 268 S.W.2d 290, 295 (Tex.Civ.App.— Galveston 1954, writ ref'd n.r.e.) (noting that money is an exception to the general rule "because of the necessity that money pass freely in commercial transactions").

That is why "[i]n examining the 'good conscience' element, courts have concluded that, 'one who receives money which has been illegally obtained by a third party in due course of business, in good faith, and for valuable consideration, can keep it without liability to him from whom it was stolen." *GE Capital Commercial, Inc. v. Wright & Wright, Inc*., No. 3:09-CV-572-L, 2011 WL 124237, at *6 (N.D. Tex. Jan. 13, 2011) (quoting *Sinclair Houston Fed. Credit Union*, 268 S.W.2d at 295); see also *Compass Bank v. Villarreal*, No. L- 10-08, 2012 WL 13046324, at *9 (S.D. Tex. Feb. 28, 2012) (noting that the cases of Bank of Saipan and Casstevens stand for the proposition that "one who in good faith gives valuable consideration in exchange for a benefit can keep the benefit without liability to the victim"); *Thabico Co. v. Kiewit Offshore Servs., Ltd., No. 2*:16-CV-427, 2017 WL 175815, at *4 (S.D. Tex. Jan. 17, 2017) (dismissing claim for money had and received because defendant's receipt of funds had been supported by consideration and was in the due course of business).

**"Good Conscience" Considerations**

When determining whether COFS has shown that Tier 1 Sands LLC holds money which in "good conscience" belongs to COFS, the Court should examine each of the three considerations identified by the court in *GE Capital Commercial, Inc*. — "due course of business," "in good faith," and "for valuable consideration."

a) Good Conscience: Due Course of Business

The sale and delivery of frac sand is the due or ordinary course of Tier 1 Sand's business. Findings of Fact No. 1.  Tier 1 Sands offered to sell and deliver sand to Frac Sand Unlimited. Findings of Fact No. 2.  Tier 1 issued purchase orders to FSU which required full payment for the sand prior to delivery by Tier 1.  Findings of Fact No. 3. Tier 1 was paid pursuant to the purchase order and delivered the sand to FSU.  Findings of Fact No. 4.  Although the money for the payment ultimately came from the escrow agent, Tier 1 received such money in its due and ordinary course of business.  Thus, the first element of good conscience has been met.

b) Good Conscience: In Good Faith

Tier 1 did not acquire the money paid by the escrow agent in an unlawful manner and there is no evidence that Tier 1 knew that the disbursement to Tier 1 was not properly authorized.  Only when the receiver of the money has actual knowledge that the money was stolen will the receiver of the money be found to be not in "good faith": "[M]ere ground of suspicion of defect of title, or knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, will not defeat title. Bad faith alone will defeat the right of the taker without knowledge." See *Merchants' Loan & Trust Co. v. Lamson*, 90 Ill.App. 18, 21 (Ill.App.Ct. 1899) (emphasis added) (finding that individuals who received stolen money were "not shown to have had knowledge of the theft by which the moneys in question were obtained.

At most it can only be said that there were grounds of suspicion, or that they were guilty of some degree of negligence. No bad faith upon the part of appellees can be predicated upon these facts."); see also *Am. Surety Co. of N.Y. v. Bache*, 82 S.W.2d 181, 182-83 (Tex.Civ.App.— Fort Worth, 1935, writ ref'd); *Ohio Cas. Ins. Co.*, 297 F.2d at 266-67 (citing *Merchants' Loan & Trust Co.*, 90 Ill.App. at 19-21); *First Nat'l Bank of Birmingham, Ala. v. Gibert & Clay*, 123 La. 845, 49 So. 593, 596 (1909).  In this case, there is no evidence whatsoever that Tier 1 had knowledge that the disbursement by the escrow agent was not authorized.  Indeed, there is no evidence that Tier 1 even 1 knew it had received money from any other person other than FSU. As such, the second element of good conscience has been met.

c) Good Conscience: For Valuable Consideration

Consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promisor or a detriment to the promisee. The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991).  In order for the exchange of "valuable consideration" to occur, there must be two parties to the promise.  In this case, Tier 1 promised to deliver frac sand in exchange for the proceeds received. Findings of Fact No. 5. Tier 1 did in fact deliver the sand.  Finding of Fact No. 6.  As such, the third element of good conscience has been met.

### "Balancing the Equities" Considerations

The second element the Court must consider is whether the equities of the case in view of the totality of the circumstances, that Tier 1 holds money that belongs to COFS. When balancing these equities, a court may consider, but is not limited to, the following: (1) any detrimental

3

reliance suffered by the defendant (*Bank of Saipan v. CNG Fin. Corp*., 380 F.3d 836, 843 (5th Cir. 2004); *First Am. Title, Ins. Co. v. Brett C. Moody Invs*., LLC, No. H-14-0473, 2015 WL 1220733, at *12 (S.D. Tex. March 17, 2015); *Chesapeake Operating, Inc. v. Whitehead*, No. C-10-301, 2011 WL 3813174, at *8 (S.D. Tex. Aug. 26, 2011) and (2) "what the parties knew and intended." *Murray v. Cadle Co*., 257 S.W.3d 291, 300-01 (Tex.App.— Dallas 2008, pet. denied).

a) Balancing the Equities: Detrimental Reliance

Any detrimental reliance suffered by the defendant may be considered in weighing the equities. *First Am. Title, Ins. Co*., 2015 WL 1220733, at *12; *Chesapeake Operating, Inc. v. Whitehead*, No. C- 10-301, 2011 WL 3813174, at *8 (S.D. Tex. Aug. 26, 2011). To show detrimental reliance, a party must demonstrate that it materially changed its position in reliance on the money received. *First Am. Title, Ins. Co*., 2015 WL 1220733, at *8; *Arcturus Corp. v. Espada Operating, LLC*, No. 13-13-00713-CV, 2016 WL 4272381, at *9 (Tex.App.— Corpus Christi-Edinburg Aug. 11, 2016, no pet.). In this case, Tier 1 materially changed its position in reliance on the payment, which it claims is a full defense to a claim for money had and received. More specifically, Tier 1 relied on the payment before it would ship the sand to FSU. Finding of Fact No. 4. Accordingly, equity consideration favors a finding for Tier 1. See *Greer v. White Oak State Bank*, 673 S.W.2d 326, 329 (Tex.App.1984) (as between equally situated parties, the law favors the one changing position in reliance on payment).

b) Balancing the Equities: What the Parties Knew and Intended

"What the parties knew and intended are all relevant factors in balancing the equities ...." *Murray*, 257 S.W.3d at 300). This factor weighs heavily in favor of Tier 1. Specifically, COFS had notice of Stan Bate's prior legal troubles and was instructed to be "cautious". Finding of Fact No. 7. Yet, COFS entered into a business arrangement with a known shady character and hoped to make a substantial profit in its purchase and sale of frac sand. In weighing the equities, the Court can consider the fact that COFS engaged into a business arrangement that has inherent monetary risks. See *Edwards v. Mid-Continent Office Distributs., L.P*., 252 S.W.3d 833, 840 n.10 (Tex.App.— Dallas 2008, pet. denied) (affirming trial court's judgment that plaintiff take nothing in a claim for money had and received when, in balancing the equities, the trial court found that "[t]he transaction between [the parties] was a high-risk transaction through which [the plaintiff] hoped to make a significant profit").

Conversely, there is no evidence whatsoever that Tier 1 had any knowledge of the escrow agreement, the terms of the escrow agreement, the existence of COFS, or the fact that FSU was purchasing the sand for Stan Bates. Indeed, there is no evidence that Tier 1 knew that the money received for the sale and delivery of the sand came from the escrow account or any other party other than FSU. As such, the equities in this case favor a finding for Tier 1.

### COFS Lack of Standing

In order to recover on its claim for money had and received, COFS must show that the money belongs to COFS. COFS has failed to provide any evidence that it was COFS money that was used to pay Tier 1. To the contrary, COFS introduced evidence that the escrow account was

4

funded by money received from ProPetro Services. Finding of Fact No. 8. That is, Ex. CP-66 clearly indicates that the initial deposit of $1,00,000.00 into the escrow account was from ProPetro Services Inc. Furthermore, COFS' representative testified that any money recovered in this lawsuit belongs to ProPetro. Trial Transcript Vol 1 page 110 Line 15-18. Thus, as the money that was used to pay Tier 1 did not belong to COFS, COFS cannot recover on its claim.

**All Other Claims Asserted by COFS Against Tier 1**

COFS also pled claims against Tier 1 for conversion, theft, and civil conspiracy. However, at trial COFS abandoned those claims and asserted that the only remaining claim against Tier 1 is the claim for money had and received. Trial Transcript Vol 2 page 42 Line 4-5. Accordingly, the Court should dismiss these claims of conversion, theft, and civil conspiracy asserted against Tier 1.

### III. Conclusion

COFS has brought numerous claims against Tier 1. For the reasons set forth herein, the Court should find that all of COFS' claims must fail.

The Court should conclude that:

1. Tier 1 received the money in due course of business, in good faith, and for valuable consideration;
2. Tier 1 detrimentally relied on the payment received for the sale and delivery of frac sand to FSU;
3. COFS lacks standing to assert a claim for money had and received against Tier 1;
4. COFS abandoned its claims against Tier 1 for conversion, theft, and civil conspiracy;
5. Tier 1 is entitled to a judgment in its favor and that COFS take nothing against Tier 1 on all claims asserted against Tier1.

Respectfully submitted,

VILLA & WHITE LLP

By: /*s/ Morris E. "Trey" White III*
Morris E. "Trey" White III
Texas State Bar No. 24003162
1100 NW Loop 410 #802
San Antonio, Texas 78213
treywhite@villawhite.com
Tel:   (210) 225-4500
Fax:   (210) 212-4649
ATTORNEY FOR TIER 1 SANDS LLC

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on March 24, 2020, a true and correct copy of the foregoing was served by ECF notification upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Morris E. "Trey" White III*
Morris E. "Trey" White III